**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**FILED**

JAMES J. WALDRON, CLERK

August 27, 2013

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: /s/ Nelson Dos Santos,
Deputy

|   |   |   |   |
|---|---|---|---|
| IN RE: | : | CHAPTER | 13 |
| | : | | |
| Roberto Lo Sia and Felicitas Lerma Sia, | : | | |
| | : | CASE NO.: | 10-41873 |
| | : | | |
| | : | | |
| Debtor. | : | | |
| | : | | |
| Roberto Lo Sia and Felicitas Lerma Sia, | : | ADV. NO.: | 11-1436 |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | OPINION | |
| | : | | |
| BAC Home Loans Servicing, | : | | |
| | : | | |
| Defendant. | : | | |

**Before:       HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Andy Winchell, Esq.
Law Offices of Andy Winchell, PC
332 Springfield Avenue, Suite 203
Summit, NJ 07901
Attorney for Debtors

Barbara K. Hager, Esq.
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Attorneys for BAC Home Loans Servicing

The Plaintiff and Defendant have filed competing summary judgment motions in the pending adversary proceeding.  The motions address the sufficiency of the proof of claim filed by Defendant and  whether Defendant is entitled to enforce the Note, whether the alleged failure to comply with the Pooling and Servicing Agreement of a securitized trust precludes Defendant from enforcing the Note, and whether certain statutes protecting consumers in real estate transactions have been violated.  As set forth at length below, the court grants Defendant's summary judgment motion and denies Plaintiffs' Summary Judgment motion.

In response to Defendant's summary judgment motion, the Plaintiffs also filed a motion to strike the affidavit of Cara Hardy as hearsay.  As discussed below, that motion is denied because the court finds that Ms. Hardy had sufficient personal knowledge of the record keeping processes of her employer.  Defendant further filed motions in limine to bar introduction of exhibits submitted by Plaintiffs to evidence fraudulent indorsement of Plaintiffs' Note and to bar consideration of the expert report submitted by Plaintiffs.  As also set forth below, neither the exhibits nor the expert report will be considered in ruling on the summary judgment motions.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference issued by the United States District Court for the District of New Jersey dated September 18, 2012.  The claims set forth in the Complaint constitute objections to the proof of claim and are core proceedings under 28 U.S.C. § 157(b)(2)(B).

### I.    General

Roberto Lo Sia and Felicitas Lerma Sia ("Debtors" or "Plaintiffs") filed for relief under

Chapter 13 of the United States Bankruptcy Code (the "Code") on October 14, 2010.  Their

Chapter 13 Plan proposed to cure the arrears on the first mortgage, but disputed the total amount

due and additionally disputed that the secured creditor identified on Debtors' Schedule D, BAC

Home Loans Servicing, L.P. ("BAC"), was the lawful owner or holder of the mortgage note.[1]

Not long thereafter, the instant adversary complaint was filed.   An amended complaint

("Amended Complaint")  was later filed and contains six counts, which the Debtors denominate

as claims.

The First and Second Claims assert a lack of standing by BAC to file a proof of claim in

the Chapter 13 case.  The Debtors claim that BAC was never the holder, assignee or owner of

the mortgage note signed by the Plaintiffs.  The Second Claim alleges the mortgage note has

never been lawfully endorsed. The Third Claim asserts violations of Real Estate Settlement

Procedures Act ("RESPA") and the Trust in Lending Act ("TILA") based on the alleged failures

to timely and adequately respond to Qualified Written Requests ("QWRs") transmitted to BAC.

The Fifth Claim is premised on the Fair Debt Collection Practices Act ("FDCPA") and alleges

that BAC violated §§1692e, (3) and (10) as well as § 1692f(1), by making false and misleading

representations concerning the amount owed, the fees applied, the application of payments and

the ownership of the mortgage note.[2]   The Plaintiffs request statutory damages, punitive

damages and legal fees under § 1692k of the FDCPA.

Defendants now move for summary judgment on the First, Second, Fifth and Sixth

Claims of the Amended Complaint.  Plaintiffs' competing summary judgment motion requests

---

[1] As will be discussed infra, BAC was the servicer of the mortgage loan and was never the owner.  At some point BAC became the sub-servicer for the master servicer, Wells Fargo Bank, N.A.  The sub-servicer is now Bank of America, N.A. f/k/a BAC Home Loans Servicing.

[2] The court previously granted judgment on the pleadings in favor of the Defendant as to the Fourth Claim which sought relief under Code § 105 based on an allegedly fraudulent proof of claim.  Additionally, judgment was granted in favor of Defendants on the Fifth Claim to the extent it asserted that the proof of claim violated the FDCPA.

findings in their favor on the First and Second Claims.

## II.      Summary Judgment Standard

Summary judgment may be granted where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if under the applicable substantive law a dispute over that fact might affect the outcome of the suit.  *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

The party seeking summary judgment in its favor "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex v. Catrett,* 477 U.S. 317, 323 (1986).   Once a movant has met its initial burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question."  *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  When the movant has produced evidence in support of summary judgment, the opponent may not rest on the allegations in his pleadings, but must counter with specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 323;  *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (the opponent must do more than rely upon mere allegations, general denials, or vague statements); *see also*, Fed. R. Civ. P. 56(c).

Summary judgment may be granted only if "after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes

4

that there is no genuine issue of material fact to be resolved at trial and [that] the moving party

is entitled to judgment as a matter of law." *Battaglia v. McKendry*, 233 F.3d 720, 722 (3d Cir.

2000) (citations omitted); *see also*, *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir.

2004).  Importantly, appellate courts have cautioned that the court's role in deciding a summary

judgment is not to resolve disputed issues of fact or to make credibility decisions.  *Big Apple*

*BMW, Inc. v. BMW of N.A., Inc.*, 974 F. 2d 1358, 1362-63 (3d Cir. 1992), *cert. denied,* 507 U.S.

912 (1993).  "In practical terms, if the opponent has exceeded the 'mere scintilla' threshold, and

has offered a genuine issue of material fact, then the court cannot credit the movant's version of

events against the opponent, even if the quantity of the movant's evidence far outweighs that of

its opponent." *Id.*

### III.   Discussion

#### A.   First and Second Claims

The Plaintiffs' complaint is not verified and neither Plaintiff has supplied an affidavit or

certification in support of their summary judgment motion.  The unsworn Statement of Facts in

the Plaintiffs' Motion for Summary Judgment provides most of the facts on which they rely.  To

the extent these facts match the facts contained in the affidavit and exhibits supplied by BAC,

the court has considered them.

#### 1.   Creation of Mortgage Loan

Both Plaintiffs and Defendant agree that on August 18, 2005, the Plaintiffs executed an

Adjustable Rate Note in the amount of $487,500 (the "Note") and a Mortgage (together, the

"Mortgage Loan") in favor of Countywide Home Loans, Inc. ("CHL") (Affidavit of Cara Hardy

("Hardy Aff.") Exs. A, B)  Ms. Hardy's affidavit indicates that on or about August 26, 2005,

BAC began servicing the Debtor's Mortgage Loan.  The Debtors do not contest this assertion.

It appears that a few years later, the Mortgage Loan fell in arrears.   As of November 9, 2009, Plaintiffs were in arrears in the amount of $10,938.71.  (Hardy Aff. ¶ 22)  Plaintiffs tendered a payment of $3,669.26 on November 9, 2009, but Defendants elected not to apply it because Plaintiffs were more than one month in arrears.  (*Id*. ¶ 26)  Instead, the November 9, 2009 payment was held in suspense.  (*Id*. ¶ 27)  No fees were paid from the funds held in suspense.  (*Id*. ¶ 28)  Plaintiffs assert that, on or about February 23, 2010, Defendant initiated foreclosure proceedings in the New Jersey Superior Court, Union County.  The court finds the commencement of foreclosure proceedings a reasonably verifiable fact as the Proof of Claim filed by BAC lists foreclosure fees and costs as part of its claim.  (*See* Claims Register # 14-1) Plaintiffs further state that shortly thereafter they sought legal counsel, which resulted in this Chapter 13 case and adversary proceeding.

The proof of claim filed in this case may have created some uncertainty that contributed to the filing of the adversary proceeding.  The proof of claim identifies BAC as the creditor and does not reveal that its capacity is that of a servicer.  (Plaintiffs' Summary Judgment Motion, Ex. B)  Further, the proof of claim contains an Assignment of Mortgage dated February 18, 2010 from Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for CHL to BAC.  (*Id*.)  There is no identification in the proof of claim of a securitization trust as the owner of the Note.

### 2.  <u>Possession of the Note</u>

Plaintiffs argue that BAC lacked standing to file a proof of claim because BAC was never the actual owner, holder or lawful assignee of the Note.  Considerable discovery has been taken on this issue in the course of this adversary proceeding, and the facts adduced are as

follows:

1. A Master Mortgage Loan Purchasing and Servicing Agreement ("MMLPSA") existed between CHL and Banc of America Mortgage Capital Corporation that provided for the sale of loans to various trusts. (Hardy Aff. ¶ 12) Further, a Servicing Agreement between Banc of America Funding Corporation and Bank of America, N.A. ("BANA") provides for servicing of the Trust by BANA. (*Id*.)

2. After Plaintiffs executed the Mortgage Loan with CHL, a securitization trust ("Trust") was created by the execution of a Pooling and Servicing Agreement ("PSA") by and between Banc of America Funding Corporation as Depositor, Wells Fargo Bank, N.A. as Master Servicer, and Securities Administrator and Wachovia Bank, National Association, as Trustee.

3. The Mortgage Loan was transferred to Wachovia Bank, National Association, as trustee for holders of Banc of America Funding Corporation Mortgage Pass-Through Certificates Series 2005-H. (Am. An. ¶ 19) The Plaintiffs' Mortgage Loan is among the mortgage loans identified on the BAFC 2005-H-CWHL Final Loan List ("Loan List") as one of the mortgage loans included in the Trust. (Hardy Aff. Ex. D)

4. According to Ms. Hardy, BANA's collateral routing history shows that on October 25, 2005, the Note and Mortgage were provided to Wells Fargo "who is the custodian of the Trust." (Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Reply") Ex. D ("Hardy Dep.") 12:23 to 13:3) She further clarified that BANA's collateral routing history identifies the Note and Mortgage as being a collateral file. (*Id*. 18:24 to 19:10; 21:1 – 21)

5. Ms. Hardy further stated that CHL maintained the Note and Mortgage at Recon Trust before they were transferred to Wells Fargo. (*Id*. 16:12-13)

6. Ms. Hardy also testified in response to a question from Defendant's counsel that when the collateral file was sent to Wells Fargo, the Note was indorsed in blank. (Hardy Dep. P. 42 L16 to p. 43 L3) This was the business practice of Recon Trust. (*Id*. 26:1-19) She further stated "[t]he note was indorsed in blank prior to sending the collateral to the trust. Had the note not been indorsed in blank or indorsed specifically, we would have received this loan back via an exception report which we did not, not did we have to repurchase it so it's my belief that the note was indorsed prior to us sending it to Wells Fargo, us as in prior to Countrywide sending the collateral to Wells Fargo." (*Id*. 44:7-15)

7. She confirmed this testimony in response to further questioning from Plaintiffs' counsel:

   Q.    How do you know it was the business practice in 2005?
   A.    It's – it's the business practice of Recon Trust who was formerly known as Treasury Bank, they prepare the note for indorsement and when this was sent on 10/25/2005, another way to show that it was endorsed is

when we received it back, it had the full indorsement on it which was imaged in our system.  (*Id.* 43:12-20)

8.  On February 11, 2011, Source Corp., as agent for BANA, received the collateral file from Wells Fargo.  (Hardy Aff. ¶ 16; Hardy Dep. 22:12-20)

9.  The contents of the collateral file were imaged into BANA's system when it was received by Source Corp. (Hardy Aff. ¶ 16; Hardy Dep. 9. 28:1 to  29:2)

10.  The imaged copy of the Note bears a special indorsement to Wachovia Bank, National Association, as trustee for the holders of Banc of America Funding Corporation Mortgage Pass-Through certificates, Series 2005-H.  (Hardy Aff. ¶ 17)  As of the date of her affidavit, the Note is specially indorsed to Wachovia Bank, National Association, as trustee for the holders of Banc of America Funding Corporation Mortgage Pass Through Certificates, Series 2005-H.  (Hardy Aff. ¶ 20)

11.  Ms. Hardy concludes that the special indorsement was placed on the Note by Wells Fargo Bank, N.A. after it received the collateral file from Recon Trust.  (Hardy Dep. 27:5-13)

12.  The Note remained with Wells Fargo, N.A. from October 25, 2005 until February 11, 2011 when it was sent to Defendant's counsel for purposes of this litigation. (Hardy Aff. ¶ 18)

### 3.  Plaintiffs' Motion to Strike Hardy Affidavit

Plaintiffs have not submitted any facts that counter Ms. Hardy's description of the execution of the Note and Mortgage, and the transfer of the Note and Mortgage first to Recon Trust and then to Wells Fargo.  They also do not controvert Ms. Hardy's testimony that on February 11, 2011, Source Corp., as agent for BANA, obtained the Note and Mortgage from Wells Fargo and transferred them to BANA for purposes of this litigation.  They also do not challenge the statement that when BANA received the Note from Wells Fargo it bore a special indorsement to Wachovia Bank, National Association, as Trustee for Holders of Banc of

America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-H.[3]

Instead, Plaintiffs move to strike the Hardy Affidavit and the attached exhibits on two grounds. First, Plaintiffs argue that Ms. Hardy lacks personal knowledge of the matters to which she testifies because she began her employment after all of the events that are the subject of this adversary proceeding. Second, they contend her affidavit does not satisfy the business records exception to the hearsay rule contained in Fed. R. Evid. 803(6).

Under Rule 56(c)(4), an affidavit in support of summary judgment must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Plaintiffs' complaint that Ms. Hardy is not the custodian of the records and has no personal knowledge of the creation of the business records is not well grounded. It has been held that "personal knowledge can come from review of the contents of files and records." *Washington Central Railroad Co., Inc. v. National Mediation Board*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993); *Duke v. National Mortg., L.L.C.*, 893 F. Supp. 2d 1238, 1244 (N.D. Ala. 2012) (declaration based on review of sub-servicer's records sufficient); *U.S. v. Kneapler,* 733 F. Supp. 2d 1308, 1319 (S.D. Fla. 2010) (IRS agent competent to testify as to her tax liability computation and her examination of IRS records even though she was not the agent who conducted the audit).

Plaintiffs' contention that the Hardy Affidavit does not meet the requirements of Fed. R. of Evid. 803(6) is equally unpersuasive. They contend that, because she is not the custodian, she cannot certify from her own personal knowledge that the records were "made at or near the time by – or from information transmitted by – someone with knowledge, or that the records

---

[3] Wachovia Bank, by merger, is now known as Wells Fargo. The special indorsement contains the signature of David A. Spector as Managing Director of CHL.

were kept in the regularly conducted activity of a business."[4]  Plaintiffs also challenge the Hardy Affidavit by asserting that nearly all of the records discussed by the Hardy Affidavit were not created by BANA.  In support of this contention, they claim that CHL originated and serviced the Mortgage Loan until 2008 when BANA acquired CHL's servicing operations.[5] (Plaintiffs' Opp. at 3)

First, Ms. Hardy does not need to be the custodian of the records to testify about them if she is an otherwise qualified witness.  Fed. R. Evid. 803(6)(D).  A qualified witness is someone "with knowledge of the procedure governing the creation and maintenance of the type of record sought to be admitted."  *U.S. v. Dominguez*, 835 F.2d 694, 698 (7th Cir. 1987); *U.S. v. Keplinger*, 776 F. 2d 678, 693 (7th Cir. 1985).  A qualified witness "need not have personally participated in the creation of the document nor know who actually recorded the information." *Dominguez*, 835 F.2d at 698; *U.S. v. Moore*, 791 U.S. 566, 574 (7th Cir. 1986).  Nor is there a requirement that the witness who lays the foundation be able to personally attest to the accuracy of the records.  *U.S. v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990); *U.S. v. Jakobetz*, 995 F.2d 786, 801 (2d. Cir. 1992) ("Even if the document is originally created by another entity, its

---

[4] Under the Federal Rules of Evidence ("Evidence Rule(s)"), a business record is not inadmissible hearsay if it meets the following conditions:

  (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;
  (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
  (C) making the record was a regular practice of that activity;
  (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
  (E) neither the source of information not the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

[5] Curiously, while complaining about the alleged unreliability of the Hardy Affidavit, Plaintiffs provide no supporting affidavit or exhibits to substantiate their claim that BANA did not service the Mortgage Loan until 2008.  This is perplexing because this allegation contradicts Ms. Hardy's sworn statement that the collateral routing history shows that the Note and Mortgage were given to Wells Fargo, the custodian for the securitization trust, on October 25, 2005, and that BANA is the servicer for the Mortgage Loans held by the securitization trust.

creator need not testify when the document has been incorporated into the business record of the testifying entity").

Nor is the court persuaded by Plaintiffs' contention that *In re Vee Vinhee*, 336 B.R. 437 (9th Cir. BAP 2005) precludes reliance on the Hardy affidavit.  In *Vinhee,* the BAP affirmed the Bankruptcy Court's determination that American Express had failed to demonstrate that the electronic duplicate statements proffered were the same as the actual monthly statements created and sent to the debtor.  The BAP agreed with the Debtor that the electronic duplicates were not properly authenticated because there was "no information regarding American Express' computer policy and system control procedures, including control of access to the pertinent databases, control of access to the pertinent programs, recording and logging of changes to the data, backup practices, and audit procedures utilized to insure the continuing integrity of the records."  *Id*. at 448-49.  If determination of the pending summary judgment motions turned on the adequacy of BANA's computer records, the court might be inclined to agree that more foundation is required regarding the computer equipment and programs used. In the matter at hand, the central question is what party is entitled to enforce the Note.  In that regard, Ms. Hardy's critical testimony is that she received and inspected the physical copies of the Note and Mortgage obtained from Wells Fargo by BANA's agent Source Corp. and that the Note and Mortgage are in the possession of Defendant's counsel.

Second, a witness is qualified to lay the foundation for business records if she is familiar with the record-keeping procedures of the organization.  *Dyno Const. Co. v. McWane, Inc.*, 198 F.3d 567, 576 (6th Cir. 1999).  From her affidavit and her deposition, it is apparent that Ms. Hardy has the requisite personal knowledge and is competent to testify to the matters stated in her affidavit.  She stated that, in her position as an A.V.P. Mortgage Resolution Associate at BANA, she has familiarity and personal knowledge of BANA's business practices and

procedures for servicing mortgages. Ms. Hardy further stated that she has personally reviewed not only the digital imaged copies of the documents and servicing records in Plaintiffs' mortgage loan file, but also the original Note and Mortgage. Further, at her deposition, and in response to questions from Plaintiffs' counsel, Ms. Hardy testified knowledgeably about the handling of documents in the securitization process and the procedures of ReCon Trust and Source Corp.

However, Plaintiffs' Reply in Opposition to Defendant's Summary Judgment Motion ("Reply") also expresses "concern" that the Note Ms. Hardy identifies as having been received from Source Corp. bore a special indorsement from CHL to Wachovia Bank, as Trustee. They suggest that this might be a "ta-da" indorsement because the Proof of Claim filed by BAC in November 2010 included a version of the Note without an indorsement. The Plaintiffs further question the fact that the special indorsement contains the signature of David A. Spector, stating that "David Spector's various signatures have become sufficiently ubiquitous that they cannot be trusted." (Reply p. 11) Plaintiffs also invite the court to look at samples of Mr. Spector's signature set forth in Exhibit I to Plaintiffs' Summary Judgment Motion. Plaintiffs also baldly state: "The Plaintiff is not convinced about the authenticity of the indorsement on the Note. Reports of fraudulent indorsements on Countrywide – originated notes, particularly when they carry the signature of David Spector, are extremely common." (Plaintiffs' Summary Judgment Motion, p. 9 ftn. 3)

The foregoing paragraph can only be viewed as argumentative and conclusory. No affidavit or exhibit supports these "concerns" except for Exhibit J which is unauthenticated and therefore unreliable.[6] Defendant objects that Exhibit J was not produced in discovery and

---

[6] Fed. R. Evid. 901(a) requires that to authenticate or identify an item of evidence, the proponent must produce evidence sufficient to support a finding that the evidence is what the proponent claims that it is.

should therefore be barred.  In fact, in a separate motion in limine, they have requested such

relief.  The court agrees that Plaintiffs have been somewhat cavalier in meeting their discovery

obligations and that they should have produced the exhibits.  However, the court grants the

motion in limine primarily because the exhibit is not authenticated and it therefore lacks

evidentiary value.  As a result, the court does not take Exhibit J into consideration in ruling on

the motions for summary judgment.


### 4. <u>Negotiability of the Note</u>

Though Plaintiffs concede execution of the Note in favor of CHL, they deny that the

Note meets the requirements of N.J.S.A. 12A:3-104(a) and, as result, they contend that Article 3

of the Uniform Commercial Code does not govern the matter before the court.  To be a

negotiable instrument under § 3-104(1), the instrument must conform to all of its requirements

and contain no unauthorized terms:

> a. Except as provided in subsection c. and d. of this section,
> "negotiable instrument" means an unconditional promise or
> order to pay a fixed amount of money, with or without interest
> or other charges described in the promise or order, if it:
>
>> (1) is payable to bearer or to order at the time it is
>> issued or first comes into possession of a holder;
>>
>> (2) is payable on demand or at a definite time; and
>>
>> (3) does not state any other undertaking or
>> instruction by the person promising or ordering
>> payment to do any act in addition to the
>> payment of money, but the promise or order
>> may contain an undertaking or power to give,
>> maintain, or protect collateral to secure
>> payment, an authorization or power to the
>> holder to confess judgment or realize on or
>> dispose of collateral, or a waiver of the benefit
>> of any law intended for the advantage or
>> protection of an obligor.

N.J.S.A. 12A:3-104(a).

Plaintiffs focus on § 104(a)(3), arguing that certain provisions of the Note and Mortgage constitute undertakings by Plaintiffs that cause the Note to be nonnegotiable.  Plaintiffs argue that the complete agreement between the parties is embodied in both the Note and the Mortgage, and it is necessary to also consider the terms of the Mortgage to ascertain whether the Note is a negotiable instrument.  As a basis for examining the terms of the Mortgage, Plaintiffs rely upon § 3-117, which states:

> Subject to applicable law regarding exclusion of proof of contemporaneous or previous agreements, the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement.  To the extent an obligation is modified, supplemented, or nullified by an agreement under this section, the agreement is a defense to the obligation.

N.J.S.A. 12A:3-117.

Plaintiffs first argue that Paragraph 5 of the Note that affords Plaintiffs the right to prepay the Note and which states "When I make a Prepayment I will tell the Note Holder in writing that I am doing so," states an undertaking in addition to the payment of money, thereby vitiating the negotiability of the Note.[7]

Plaintiffs supply no case authority for this argument, although attached as exhibits to their Response to Defendant's Motion for Summary Judgment are two journal articles

---

[7] Plaintiffs' Opposition to Defendant's Summary Judgment Motion actually cites Uniform Covenant 4 of the Mortgage as the source for Plaintiffs' prepayment right.  This is incorrect because Uniform Covenant 4 of the Mortgage addresses charges and liens requiring the Plaintiffs to "pay all taxes, assessments, charges, fines and impositions attributable to the Property…"  The language quoted by Plaintiffs in their opposition is only found in Paragraph 5 of the Note.  Accordingly, for ease of analysis, the court refers to the intended paragraph in the Note.

advocating this position.[8]  On the other hand, the courts that have considered this argument have rejected Plaintiffs' analysis.  Most recently, *In re Steinberg* held that the negotiability of a note is not affected by a requirement to give written notice to a noteholder in the event of prepayment of principal.  2013 WL 23517797 *4 (10th Cir. BAP, May 30, 2013)  It joined other courts in finding that such a provision is not an act or undertaking that affects the status of a note as a negotiable instrument "because (1) prepaying principal is voluntary, not required; (2) the prepayment notification requirement imposes no additional liability on the debtor and is not an additional condition placed on the debtor's promise to pay; and (3) there is no penalty for failing to notify of prepayments.  *Id.;  See also, In re Walker*, 466 B.R. 271, 283 (Bankr. E.D. Pa. 2012); *Picatinny Fed. Credit Union v. Fed. Nat'l Mortg. Ass'n.*, 09-1295, 2011 WL 1337507 at *7 (D.N.J. 2013, April 7, 2011); *HSBC Bank USA, N.A. v. Gouda*, F-20201-07, 2010 WL 5128666 at *2-3 (N.J. App. Div. Dec. 17, 2010), cert. den., 132 S. Ct. 1019 (2012).

This court joins the courts identified above in holding that the inclusion of a provision for notice to the lender in a prepayment clause does not result in an act or undertaking that destroys the negotiability of a note containing such a clause.  Importantly, nothing in Paragraph 5 of the Plaintiffs' Note provides that Plaintiffs' ability to prepay depends on first giving notice to Defendant of their intent to prepay.  Given that prepayment is voluntary, is not burdened by a requirement for permission from the noteholder, confers a benefit on Plaintiffs and is not made ineffective by the failure to give notice to Defendant, the court does not find that the notice provision burdens or conditions the Plaintiffs' promise to pay so as to cause the Note to no longer be a negotiable instrument.

---

[8] Thomas Erskin Ice, *Negotiating the American Dream: A Critical Look at the Role of Negotiability in the Foreclosure Crisis*, The Florida Bar Journal (Dec. 2012) available at floridabar.org/DIVCOM/JN/JNJournal01.nsf/.../ab90f3a395acd39f85257ac2006cab6a!OpenDocument; Dale A. Whitman, Symposium, *How Negotiability Has Fouled up the Secondary Mortgage Market, and What to Do About It*, 37 PEPP. L. REV. 737 (2010).

Plaintiffs also contend that Paragraph 6 of the Note causes Plaintiffs' promise to pay the Note to be conditional because it obligates Plaintiffs to pay the amount set in the Note only if it is consistent with applicable law.    Plaintiffs argue that this violates the requirement for negotiability under N.J.S.A. 12A:104(a) that a "fixed amount of money" be paid.    Paragraph 6 provides as follows:

> 6.    Loan Charges
>
> If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.    The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.    If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

N.J.S.A. 12A:104(a).

The first page of Plaintiffs' Note clearly states that they obligated themselves to pay $487,500.00, plus interest, "in regular Periodic Payments and to pay the debt in full not later than September 1, 2035."    Paragraph 6 does not alter this fixed obligation except to the extent it provides the Note Holder with the option to refund an impermissible charge by either making a direct refund payment to Plaintiffs or by reducing the principal due and treating it as a prepayment.    The direct repayment of an impermissible loan charge does not alter the fixed amount due under the Note, as it modifies neither principal or interest amounts.    Nor does the Note Holder's option to reduce the principal by the amount of a loan charge refund affect the fixed amount owed under the Note.    By treating the loan charge refund as a prepayment, this provision does no more than potentially accelerate, to some degree, Plaintiffs' satisfaction of the amount due under the Note.

Plaintiffs further argue that the following provisions of the Mortgage also destroy the negotiability of the Note:

- <u>Uniform Covenant 2</u> Providing for the order of priority for payment of principal, interest and other charges, as well as a credit for any misapplied payment.

- <u>Uniform Covenant 14</u> Providing for fees for services "performed in connection with the Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including but not limited to attorneys' fees, property inspection and valuation fees.

In its entirety, Uniform Covenant 2 provides:

> Application of Payments or Proceeds.  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal die under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

This language imposes no obligation, promise or condition on the maker of the Note. The paragraph simply describes the manner in which the payments made will be applied by the lender.  As such, Uniform Covenant 2 does no more than describe the lender's rights and obligations and has no affect on the maker of the Note.

Plaintiffs' claim that Uniform Covenant 14 contains an express condition justifying withholding a portion of the stated principal amount of the Note, or demanding a credit on the amount due.  Though Plaintiffs do not identify the language in Covenant 14 giving rise to the claimed express condition, the court infers it to be the following:

> If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the

17

> permitted limit; and (b) any sums already collected from Borrower
> which exceeded permitted limits will be refunded to Borrower.
> Lender may choose to make this refund by reducing the principal
> owed under the Note or by making a direct payment to Borrower.
> If a refund reduces principal, the reduction will be treated as a
> partial prepayment without any prepayment charge (whether or not
> a prepayment charge is provided for under the Note). Borrower's
> acceptance of any such refund made by direct payment to
> Borrower will constitute a waiver of any right of action Borrower
> might have arising out of such overcharge.

Under N.J.S.A. 12A:3-106(a), a promise or order is not unconditional if it states an express condition to payment. Examination of the terms of Covenant 14 reveals no express condition to payment much less the grant of an ability to withhold payment or demand a credit. Rather, the covenant contains a remedy for the Plaintiffs in the event of an overcharge. Furthermore, to the extent that the covenant provides for a refund to be treated as a prepayment, it falls within the scope of § 3-106(b), which states that "A promise or order is not made conditional by a reference to another writing for a statement of rights with respect to collateral, prepayment, or acceleration, or because payment is limited to resort to a particular fund or source." N.J.S.A. 12A:3-106(b).

The only facts before the court establish that 1) Plaintiffs executed the Note and Mortgage in favor of CHL, 2) the Note is a negotiable instrument; 3) the Note and Mortgage were first transferred to Wachovia Bank as trustee for the Trust and then to Wells Fargo as custodian for the Trust; 4) the Note was indorsed in blank prior to its transfer to the Trust; and 5) while in the possession of Wells Fargo, the Note was specially indorsed to the Trust.[9] These facts establish that the Trust is entitled to enforce the Note.

Under § 12A:3-301 a "person entitled to enforce" a negotiable instrument may be:

> the holder of the instrument, a nonholder in possession of the

---

[9] As the custodian for the Trust, Wells Fargo's possession of the specially indorsed note satisfied the requirement that the identified person to whom the instrument is payable be in possession. *See*, Comment 1 to N.J.S.A. 12A:3:201(b) (possession by an agent fulfills the possession requirement).

18

> instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A:3-309 or subsection d. of 12A:3-418. A person may be person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

N.J.S.A. 12A:3-301.

When the ownership of an instrument is transferred, as described above, the transferee's attainment of "holder" status depends on the negotiation of the instrument to the transferee. N.J.S.A. 12A:3-201(a).   Negotiation is achieved by transfer of possession of the instrument to the transferee, and its indorsement by the holder.   N.J.S.A. 12A:3-201(b).   An indorsement made by a holder is either a special or blank indorsement.[10]

As a result, on the issues of whether the Note is a negotiable instrument and whether the Trust is entitled, as a holder, to enforce the Note, summary judgment is granted in favor of Defendants.   Plaintiffs' summary judgment motion is denied on these issues.

When Plaintiffs filed their Summary Judgment Motion, they simultaneously filed a "Notice of Submission of Expert Report," to which they appended an Expert Report prepared by Leo O. McCabe opining on whether the Plaintiffs' Mortgage Loan was properly conveyed to the Trust.   Defendant immediately filed a Motion in Limine to bar the Expert Report.   The court grants Defendant's motion on the grounds that Plaintiffs never identified this expert in their discovery responses and that the alleged expert's report is irrelevant to the determination of whether the Trust, as holder of the Note, is entitled to enforce the Note.

Discovery in this matter closed on July 31, 2012.   Plaintiffs made no request to extend the discovery period to enable them to obtain Mr. McCabe's testimony.   Nor did they identify

---

[10] Section 3-205(b) provides:
    b. If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement."   When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.   N.J.S.A. 12A:3-205(b).

him as an expert witness.  In an interrogatory answer, Plaintiffs identified two other persons as potential witnesses, but made no mention of Mr. McCabe. (Supplemental Certification of Barbara K, Hayer, Exhibit A Interrogatory 4)  Witnesses not disclosed as required by Fed. R. Civ. P. 26(a) and 26(e)(1)(a) may not give evidence "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Rule 37(c)(1)(A)-(C) gives the court latitude to impose lesser sanctions (e.g., payment of reasonable expenses caused by the failure), which the court would consider if Mr. McCabe's testimony had relevance.[11]  As discussed supra, the court has determined that the issue of whether the Mortgage Loan was properly conveyed to the Trust has no bearing on determination of the party entitled to enforce the Note.  As set forth in the next section, the Court also finds that  Plaintiffs lack standing to raise the issue of alleged lack of compliance with the PSA and New York Trust Law in conveying the Mortgage Loan to the Trust.  Accordingly, the court bars the use of Mr. McCabe's report.

### 5.  **Standing to File Proof of Claim**

The First and Second Claims of Plaintiffs' Amended Complaint are also grounded on their contention that neither the Trust nor Defendant own the Mortgage Loan.  Plaintiffs contend that conveyance of the Mortgage Loan to the Trust did not meet the requirements of New York Trust Law or the PSA and the conveyance of the Mortgage Loan is either void or ineffective.  Consequently, they argue that the Trust cannot enforce the Note and, therefore, cannot file a proof of claim.  Defendants respond that Plaintiffs cannot assert a breach of the Trust documents because they are neither a party to, nor a beneficiary of, the Trust.

The issue has been considered by a number of courts, and the weight of authority

---

[11] Fed. R. Evid. 402 provides that irrelevant evidence is not admissible.  Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

supports the Defendants.  The First Circuit BAP in *In re Correia*, 452 B.R. 319, 324 (1st Cir. BAP 2011) upheld the bankruptcy Court's determination that the Debtors' inability to show that they were parties to the PSA precluded them from raising the alleged noncompliance with the PSA as a basis for invalidating the mortgage assignment.  The court pointed out the "case or controversy must arise between the parties themselves.  The court is restrained from hearing cases in which 'the litigant [  ] asserts the rights and interests of a third party and not his or her own'"  *Id.*, quoting *Benjamin v. Aroostook Medical center, Inc.*, 57 F.3 101, 104 (1st Cir. 1995) *See also*, *In re Walker*, 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012); *In re Edwards*, 2011 WL 6754073, *4 (Bankr. E.D. Wis. Dec. 23, 2011); *In re Smoak*, 461 B.R. 510, 519 (Bankr. S.D. Ohio 2011); *In re Almeida*, 417 B.R. 140 (Bankr. D. Mass 2009); *Livonia Property Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings L.L.C.*, 717 F.Supp. 2d 724, 748 (E.D. Mich. 2010), aff'd 399 Fed. Appx. 97 (6th Cir. 2010).  The court finds this case authority persuasive and likewise finds that Plaintiffs lack standing to assert claims based on noncompliance with the PSA and New York Trust Law.  Plaintiffs' motion is denied as to this issue.

Equally important, even if there was no compliance with the PSA, this fact would not affect the fact that pursuant to the special indorsement, the Trust is the holder of Plaintiffs' Note.  As the holder of the Note, the Trust is the Party entitled to enforce it under N.J.S.A. 12A:3-301.  As aptly noted in *Smoak*, once the identity of the holder is established, the maker of the Note "need" not be concerned with who the owner of the Note is, but only that the payments are being delivered to a person with the right to enforce the Note."  461 B.R. at 518.  This concept has been further explained:

> … the rules that determine who is entitled to enforce a note are concerned primarily with the maker of the note.  They are designed to provide for the maker a relatively simple way of determining to whom the obligation is owed and, thus, whom the maker must pay in order to avoid defaulting on the obligation.  UCC § 3-602(a),

(c).  By contrast, the rules concerning transfer of ownership and other interests in a note identify who, among competing claimants, is entitled to the note's economic value (that is, the value of the maker's promise to pay).  Under established rules, the maker should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note.  Or, to put this statement in the context of this case, the Veals should not care who actually owns the Note – and it is thus irrelevant whether the Note has been fractionalized or securitized – so long as they do know who they should pay.

*Veal v. American Home Mortgage Servicing Inc., et. al, (In re Veal)*, 450 B.R. 897 (9th Cir.

BAP 2011) (footnote omitted).

Under the foregoing analysis, as the holder of the Note, the Trust is entitled to file a proof of claim because its right to enforce the note constitutes a right to payment, thereby meeting the definition of claim in Code § 101(5).  A creditor is "an entity that has a claim against the debtor," under Code § 101(10), and a creditor or the creditor's authorized agent may execute a proof of claim.  Fed. R. Bankr. P. 3001(b).  Mortgage servicers have been determined to constitute authorized agents with standing to file proofs of claim or seek stay relief.  *In re Viencek*, 273 B.R. 354, 358 (Bankr. N.D.N.Y. 2002); *See also*, *In re Kemp*, 440 B.R. 624, 634 (Bankr. D.N.J. 2010); *In re Woodberry*, 383 B.R. 373, 379 (Bankr. D.S.C. 2008).[12]  In the course of this litigation, the Note and Mortgage have been transferred to Defendant, thus mooting Plaintiffs' concern that Defendant did not physically possess the Note and Mortgage that form the basis of the proof of claim.

This ruling that Defendant had standing to file the proof of claim is not intended to excuse Defendant's failure to file a proper proof of claim at the outset of this case.  Defendant's filed proof of claim is characteristic of the arrogance and carelessness with which many of the

---

[12] The court also rejects Plaintiffs' argument that the mortgage became "split" from the Note.  It is well-settled law in New Jersey that the mortgage follows the note.  *Bank of New York v. Raftogianis*, 418 N.J. Super. 435, 450 (N.J. Super. Ch. 2010)  "The assignment of a bond or note evidencing a secured obligation will operate as an assignment of the mortgage 'in equity.'" *Id.* (citation omitted).

servicers have filed claims and other papers in this court.  Certainly some of Plaintiffs' ire toward Defendant is well-grounded.  It took considerable digging by Plaintiffs' counsel to uncover Defendant's representative capacity.  Indeed, the proof of claim has yet to be amended to reflect that Defendant acts on behalf of the Trust, and the exhibits in support of the proof of claim have not yet been updated to include the Note with the special indorsement.  Although the court denies summary judgment in favor of Plaintiffs on their contention that Defendant lacks standing to file a proof of claim, Defendant is directed to promptly amend the proof of claim to reflect its representative capacity and to attach the Note with the special indorsement.

### B.  **FDCPA Claim**

In their Amended Complaint, Plaintiffs assert that Defendant violated 15 U.S.C. §§1692e(3) and (10) and 1692f(1) by "making false and misleading representations concerning the amount of the debt, the fees applied, the application of payments and the ownership of the Note."  (Am. Compl. ¶ 59)  No affidavit or exhibits have been proffered by Plaintiffs to substantiate this claim.  Defendant points out that in response to its interrogatory requesting a detailed factual basis for the FDCPA claim Plaintiffs responded:

> For some number of years, an agent or agents of BAC have collected and attempted to collect money from Plaintiff (sic) without the legal right to do so or while having indicated that BAC is the owner of the mortgage loan that BAC does not own.  In so doing, BAC's agent or agents also have "applied payments in contravention of terms of the applicable agreements, have transmitted false account statements, correspondence and other documents."

(Defendant's S.J. Mot. Exh. H)  No further detail is provided by Plaintiffs except for their claim that the FDCPA was violated when Defendant placed their November 9, 2009 payment into a suspense account rather than applying it to the loan balance.  (*Id.* Ex. H, Interrogs. ¶ 11)

Section 1692e(3) prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney," and (e)(10) of § 1692 prohibits "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information from a consumer." 15 U.S.C. § 1692e(3), (10). It is readily apparent that neither Interrogatory response describes conduct violative of these FDCPA provisions. As a servicer, Defendant is permitted to act on behalf of the holder of the Note and Plaintiffs have not described what account statements, correspondence or other documents are false, or were falsely transmitted. Conclusory allegations are insufficient to support a summary judgment and are likewise an inadequate defense to a summary judgment motion. Further, to the extent the FDCPA claim rests on the placement of Plaintiffs' payment in a suspense account, that claim is time-barred.[13] The statute of limitations for a FDCPA violation is one year "from the date on which the violation occurs." 15 U.S.C. § 1692k. As identified in Plaintiffs' response to Interrogatory 11 (Ex. H) the placement of Plaintiffs' funds occurred in November 2009. The complaint was not filed until March 11, 2011, more than one year from the alleged violation. For the foregoing reasons, Defendant's summary judgment motion is granted and Plaintiffs' summary judgment motion is denied.

## C.     Breach of Contract Claim

Unfortunately, Plaintiffs do not specify which provisions of the Note or the Mortgage were breached by Defendant. Again, because it is the only specific alleged misconduct cited by Plaintiffs, the court presumes that Plaintiffs contend that the placement of their November 2009

---

[13] Because Plaintiffs did not detail the conduct which allegedly violates § 1692f(1), the court has been left to speculate as to what conduct violates this section. The court presumes that the offensive conduct relates to the suspense account, because § 1692f(1) provides that "The collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law," is a violation of the FDCPA. 15 U.S.C. § 1692f(1).

24

payment in the suspense account is the basis for the alleged breach of contract.  No provision of

the Note addresses application of payments.   However, paragraph 2 of the Mortgage does

address application of payments, and provides in pertinent part:

> If Lender receives a payment from Borrower for a delinquent Periodic Payment which included a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  *If more than one Periodic Payment is outstanding, Lender **may** apply any payment received from Borrower to the repayment of the Period Payment if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess **may** be applied to any late charges due.*  Voluntary prepayments shall be applied first to any prepayment charged and then as described in the Note.

 (Hardy Aff., Ex. B) (emphasis supplied) According to Ms. Hardy (and Plaintiffs do not

contend otherwise), at the time the Plaintiffs made their November 2009 payment, they were

due for the August 2009 payment and had a negative escrow balance of -$3,321.92 (Hardy Aff.

¶ 21 and Ex. E)  A total of $10,938.71 was due as of November 2009, and Plaintiffs' payment

of $3,669.27 was insufficient to bring the account current.  (Hardy Aff. ¶¶ 22, 24)  As a result,

Defendant exercised its option to not apply the $3,669.27 to any unpaid periodic payment.  (*Id.*

¶ 26)  Ms. Hardy states that no fees were paid from the suspense account and Plaintiffs offer no

proof to the contrary.  (*Id.* ¶ 28)  The November 9, 2009 payment was held in the suspense

account, awaiting adequate funds to credit against the amount due.  (*Id.*)

These facts do not provide a basis for a breach of contract claim.  Under New Jersey

law, Plaintiffs must demonstrate (1) the existence of a contract, (2) a breach of that contract, (3)

damages resulting from the breach, and (4) that Plaintiffs have performed their own contractual

duties.  *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F.Supp. 2d 552, 561

(D.N.J. 2002).  Here, Plaintiffs, at best, have only established the existence of a contract.  The

only evident breach is Plaintiffs' failure to timely make monthly payments and that breach

25

cannot be ascribed to Defendant.  Nor have Plaintiffs set forth any damages from the claimed breach.  Accordingly, summary judgment is granted in favor of Plaintiff on this Claim for breach of contract.

    **D.**     **RESPA Claim**

Defendant does not move for summary judgment on this claim, but does oppose Plaintiffs' request for summary judgment on the grounds that Plaintiffs have not provided the two Qualified Written Requests ("QWRs") to which they claim Defendant did not timely or adequately respond, and that Plaintiffs have not identified any actual damages which they suffered as a consequence of the alleged non-compliance.[14]  The court agrees with Defendant that without the QWRs being placed before it, the court cannot determine whether the communications from Plaintiffs constitute QWRs or whether there has been a violation of RESPA, much less whether damages are appropriate under 12 U.S.C. § 1605(f).  Accordingly, Plaintiffs' motion for summary judgment on Claim Three is denied.

## CONCLUSION

Summary judgment is granted in favor of Defendants on the First, Second, Fifth and Sixth claims of the Amended Complaint.  Plaintiffs' motion for summary judgment is denied in its entirety.

Dated: August 27, 2013          ____/S/_____
                          NOVALYN L. WINFIELD
                          United States Bankruptcy Judge

[14] A QWR is written correspondence that "(i) includes…the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605e(1)(B).